## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA ex. rel. PATRICIA LESKO, | Civil Action No. 23-12934 |
| | Hon. Linda Parker |
| Qui Tam Plaintiff-Relator, | Mag. David Grand |
| | FILED *IN CAMERA* AND UNDER SEAL |
| v. | |
| | |
| ZEIGLER AUTO GROUP, INC. et al., | FALSE CLAIMS ACT |
| | |
| | JURY TRIAL DEMANDED |
| Defendants. | |
| _____/ | |

## QUI TAM COMPLAINT FOR VIOLATIONS OF
## THE FEDERAL FALSE CLAIMS ACT

*Qui Tam* relator Patricia Lesko, through her attorneys Akeel & Valentine, PLC and on behalf of the United States of America, files this Complaint against Zeigler Auto Group, Inc.; Zeigler Auto Group II, Inc.; Zeigler Imports, LLC; Zeigler Motorsports, LLC; Zeigler Grandville, Inc.; Zeigler Plainwell, Inc.; Zeigler Kalamazoo, LLC; Zeigler Kalamazoo II, Inc.; Zeigler Chrysler Dodge Jeep, LLC; Zeigler Chrysler Dodge Jeep – Downers Grove, LLC; Zeigler Hoffman Estates I; Zeigler Hoffman Estates II; Zeigler Orland Park, LLC; Zeigler Nissan Orland Park, LLC; Zeigler Infiniti Orland Park, LLC; Zeigler Chevrolet – Schaumburg, LLC;

Zeigler Lincolnwood, LLC; Zeigler North Riverside, LLC; Zeigler Nissan Gurnee, LLC; Zeigler Schaumburg IV, LLC; Zeigler Elkhart, Inc.; Aaron Zeigler; Daniel Scheid; and Chryl Procarione, and alleges as follows:

# TABLE OF CONTENTS

I.    INTRODUCTION AND OVERVIEW ....................................................1

II.    PARTIES ....................................................................................2

   A.    Relator ..................................................................................2

   B.    Defendants .............................................................................3

III.    JURISDICTION AND VENUE .......................................................9

IV.    APPLICABLE LAW ....................................................................10

   A.    The False Claims Act ..............................................................10

   B.    The Financial Institutions Reform, Recovery, and Enforcement Act
         ("FIRREA") ...........................................................................12

   C.    The Paycheck Protection Program ("PPP") ................................13

V.    FACTUAL ALLEGATIONS ...........................................................22

VI.    CAUSES OF ACTION ................................................................26

## I.    **INTRODUCTION AND OVERVIEW**

1.    Relator, Patricia Lesko, brings this case on behalf of the United States Government against Zeigler Auto Group, Inc.; Zeigler Auto Group II, Inc.; Zeigler Imports, LLC; Zeigler Motorsports, LLC; Zeigler Grandville, Inc.; Zeigler Plainwell, Inc.; Zeigler Kalamazoo, LLC; Zeigler Kalamazoo II, Inc.; Zeigler Chrysler Dodge Jeep, LLC; Zeigler Chrysler Dodge Jeep – Downers Grove, LLC; Zeigler Hoffman Estates I; Zeigler Hoffman Estates II; Zeigler Orland Park, LLC; Zeigler Nissan Orland Park, LLC; Zeigler Infiniti Orland Park, LLC; Zeigler Chevrolet – Schaumburg, LLC; Zeigler Lincolnwood, LLC; Zeigler North Riverside, LLC; Zeigler Nissan Gurnee, LLC; Zeigler Schaumburg IV, LLC; Zeigler Elkhart, Inc. ("Corporate Defendants"); Aaron Zeigler; Daniel Scheid; and Chryl Procarione ("Individual Defendants" and all collectively, "Defendants"), for treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, and civil penalties under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), partially codified at 12 U.S.C. § 1833a, owed to the United States from at least forty-six false and/or fraudulent claims submitted by the Defendants in connection with the Paycheck Protection Program ("PPP").

2.    Specifically, Defendants made false and/or fraudulent statements to obtain at least twenty-four federally guaranteed PPP loans ("PPP Loans") totaling at

least $21,675,543, which caused the United States to pay processing fees to the third-party lenders on each loan. The Defendants also made false and/or fraudulent statements in applications they submitted to have those federally guaranteed PPP loans forgiven, which caused the United States to pay *at least* $21,638,336 to reimburse the third-party lenders for the forgiven loans.

3.    Defendants materially misrepresented the Corporate Defendants' eligibility for the PPP loans by falsely certifying that each Corporate Defendant qualified as a small business under the Small Business Association's ("SBA") rules. This involved certifying that each entity, together with its affiliates, had fewer than 500 employees, despite all of the Corporate Defendants being affiliates of each other (and other non-named entities) with approximately 2,500 employees in all.

## II.    PARTIES

### A.    Relator

4.    Relator, Patricia Lesko ("Relator" or "Ms. Lesko") is a citizen of the United States of America and a resident of the State of Michigan, county of Washtenaw, and has uncovered material information regarding the false and fraudulent submissions alleged herein. She is the "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B).

5.    Relator is suing on her own behalf, and on behalf of, and in the name of, the United States of America, pursuant to 31 U.S.C. § 3730(b).

6.    Relator is an independent investigative reporter who has worked to expose fraud and corruption for over 14 years. In 2023, Ms. Lesko began investigating Defendants' business practices and corporate filings to discover that the Corporate Defendants are in fact under common control and leadership, thereby disqualifying them all from the PPP loan program.

7.    Relator has complied with the notice provision of the FCA, 31 U.S.C. § 3730(b)(2), by providing to the Attorney General of the United States and the United States Attorney for the Eastern District of Michigan, prior to the filing of this Complaint, with a statement of material evidence and information related to this complaint, which supports the existence of the false claims by Defendants.

**B.    Defendants**

*Individual Defendants*

8.    Aaron Zeigler is a citizen of the United States of America and a resident of Michigan. Mr. Zeigler is the owner, president, and director of Zeigler Auto Group, Inc., and each of the Corporate Defendants.

9.    Daniel Scheid is a citizen of the United States of America and a resident of Michigan. Mr. Scheid is the chief financial officer of Zeigler Auto Group, Inc. and holds a direct leadership role for many of the Corporate Defendants.

3

10.    Chryl Procarione is a citizen of the United States of America and a resident of Illinois. Ms. Procarione is the corporate controller of Zeigler Auto Group, Inc., and the registered agent for many of the Corporate Defendants.

*Corporate Defendants*

11.    Zeigler Auto Group, Inc. ("Zeigler Auto") is a Michigan corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler and Mr. Scheid are the listed officers of Zeigler Auto. Mr. Scheid is the registered agent of Zeigler Auto with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

12.    Zeigler Auto Group II, Inc. ("Zeigler Auto II") is a Michigan corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler and Mr. Scheid are the listed officers of Zeigler Auto II. Mr. Scheid is the registered agent of Zeigler Auto II with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

13.    Zeigler Imports, LLC ("Zeigler Imports") is a Michigan corporation but does not list its principal place of business. Likewise, Zeigler Imports does not list any officers or managers. Mr. Scheid is the registered agent of Zeigler Imports with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

14.    Zeigler Motorsports, LLC ("Zeigler Motorsports") is a Michigan corporation but does not list its principal place of business. Likewise, Zeigler

4

Motorsports does not list any officers or managers. Mr. Scheid is the registered agent of Zeigler Motorsports with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

15.    Zeigler Grandville, Inc. ("Zeigler Grandville") is a Michigan corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler and Mr. Scheid are the listed officers of Zeigler Grandville. Mr. Scheid is the registered agent of Zeigler Grandville with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

16.    Zeigler Plainwell, Inc. ("Zeigler Plainwell") is a Michigan corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler and Mr. Scheid are the listed officers of Zeigler Plainwell. Mr. Scheid is the registered agent of Zeigler Plainwell with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

17.    Zeigler Kalamazoo, LLC ("Zeigler Kalamazoo") is a Michigan corporation but does not list its principal place of business. Likewise, Zeigler Kalamazoo does not list any officers or managers. Mr. Scheid is the registered agent of Zeigler Kalamazoo with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

18.    Zeigler Kalamazoo II, Inc. ("Zeigler Kalamazoo II") is a Michigan corporation with its principal place of business as 4201 Stadium Drive Kalamazoo,

5

MI 49008. Mr. Zeigler and Mr. Scheid are the listed officers of Zeigler Kalamazoo II. Mr. Scheid is the registered agent of Zeigler Kalamazoo II with a registered agent address as 4201 Stadium Drive Kalamazoo, MI 49008.

19.     Zeigler Chrysler Dodge Jeep, LLC ("Zeigler Chrysler") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Chrysler. Ms. Procarione is the registered agent of Zeigler Chrysler with a registered agent address as 11030 W 159th St. Orland Park, IL 60467.

20.     Zeigler Chrysler Dodge Jeep – Downers Grove, LLC ("Zeigler Downers Grove") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Downers Grove. Ms. Procarione is the registered agent of Zeigler Downers Grove with a registered agent address as 11030 W 159th St. Orland Park, IL 60467.

21.     Zeigler Hoffman Estates I ("Zeigler Estates I") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Estates I. Ms. Procarione is the registered agent of Zeigler Estates I with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

22.     Zeigler Hoffman Estates II ("Zeigler Estates II") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo,

6

MI 49008. Mr. Zeigler is the listed officer of Zeigler Estates II. Ms. Procarione is the registered agent of Zeigler Estates II with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

23.    Zeigler Orland Park, LLC ("Zeigler Orland Park") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Zeigler Auto Group[1] is the listed officer of Zeigler Orland Park. Ms. Procarione is the registered agent of Zeigler Orland Park with a registered agent address as 11030 W 159th St. Orland Park, IL 60467.

24.    Zeigler Nissan Orland Park, LLC ("Zeigler Nissan") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Nissan. Ms. Procarione is the registered agent of Zeigler Nissan with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

25.    Zeigler Infiniti Orland Park, LLC ("Zeigler Infiniti") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Infiniti. Ms. Procarione is the registered agent of Zeigler Infiniti with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

---

[1] As mentioned above, Mr. Zeigler is the president and officer of Zeigler Auto Group.

26.    Zeigler Chevrolet – Schaumburg, LLC ("Zeigler Chevrolet") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Zeigler Auto Group is the listed officer of Zeigler Chevrolet. Ms. Procarione is the registered agent of Zeigler Chevrolet with a registered agent address as 11030 W 159th St. Orland Park, IL 60467.

27.    Zeigler Lincolnwood, LLC ("Zeigler Lincolnwood") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Lincolnwood. Ms. Procarione is the registered agent of Zeigler Lincolnwood with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

28.    Zeigler North Riverside, LLC ("Zeigler Riverside") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Zeigler Auto Group is the listed officer of Zeigler Riverside. Kelli Cordello is the registered agent of Zeigler Riverside with a registered agent address as 2100 South Harlem Ave. North Riverside, IL 60546.

29.    Zeigler Nissan Gurnee, LLC ("Zeigler Gurnee") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Gurnee. Ms. Procarione is the registered agent of Zeigler Gurnee with a registered agent address as 11030 W 159th St. Orland Park, IL 60467.

30.     Zeigler Schaumburg IV, LLC ("Zeigler Schaumburg") is an Illinois corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Schaumburg. Ms. Procarione is the registered agent of Zeigler Schaumburg with a registered agent address as 8550 W. 159th St. Orland Park, IL 60462.

31.     Zeigler Elkhart, Inc. ("Zeigler Elkhart") is an Indiana corporation with its principal place of business as 4201 Stadium Drive Kalamazoo, MI 49008. Mr. Zeigler is the listed officer of Zeigler Elkhart. Zeigler Ford Elkhart is the registered agent of Zeigler Elkhart with a registered agent address as 2525 Bypass Rd, Elkhart, IN, 46514.

## III.    JURISDICTION AND VENUE

32.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

33.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants have minimum contacts with the United States. Moreover, Defendants can be found in and/or transact, or have transacted, business in the Eastern District of Michigan.

34.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in and/or transact or have transacted business in this district. At all times relevant to this Complaint, Defendants conducted business within this district.

## IV.    APPLICABLE LAW

### A.    The False Claims Act

35.    The FCA was originally enacted during the Civil War. Congress substantially amended the Act in 1986—and, again, in 2009 and 2010—to enhance the ability of the United States to recover losses sustained as a result of fraud against it. The Act was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, needed modernization. Congress intended that the amendments would create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

36.    The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

* * *

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains[.]

31 U.S.C. § 3729(a)(1).

37.    For purposes of the FCA, a person acts "knowingly" if that person: "(i) has actual knowledge of [the falsity of] the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The FCA does not require proof that a defendant specifically intended to commit fraud. 31 U.S.C. § 3729(b)(1)(B).

38.    Under the implied false certification theory, however, FCA liability can arise where "the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016). This follows the rule that "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Id.* at 2000.

**B.    The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")**

39.    Congress enacted FIRREA in 1989 to strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors, as well as certain government agencies and various other covered entities. Pub. L. 101-73, 103 Stat. 183 (1989).

40.    Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. *See* 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,073,133 for assessments after December 13, 2021, for which violations occurred after November 2, 2015). The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. Id. The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false

12

statement for the purpose of influencing a decision by the Administrator of the SBA

or to obtain a loan, money, or anything of value under the SBA's 7(a) program,

including the PPP (15 U.S.C. § 645(a)).

41.    Section 1109(i) of the CARES Act provides that PPP loans are SBA

loans for purposes of 15 U.S.C. § 645.

**C.    The Paycheck Protection Program ("PPP")**

42.    The SBA is a cabinet-level agency of the United States headquartered

in Washington, D.C. The SBA's mission is to preserve free, competitive enterprise

and to maintain and strengthen the overall economy of our nation by assisting in and

facilitating the creation and growth of small businesses, a critical component of the

country's economic strength and health.

43.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act

is a federal law enacted on March 27, 2020, designed to provide emergency financial

assistance to the millions of Americans suffering the economic effects caused by the

COVID-19 pandemic. CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

44.    The CARES Act authorized forgivable loans to small businesses and

self-employed individuals for payroll, mortgage interest, rent/lease, utilities, and

certain other business-related expenses through the PPP. CARES Act § 1102(b)(1),

134 Stat. at 293.

45.    The PPP was implemented under section 7(a) of the Small Business Act, 15 U.S.C. § 636, and is administered by the SBA. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (April 15, 2020).

46.    To obtain a PPP loan, a qualifying business concern would submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

47.    The PPP section of the CARES Act expanded eligibility for SBA loans beyond limitations of the Small Business Act. 15 U.S.C. §§ 632, 636.

48.    To qualify for a PPP loan, a business concern must have fewer than 500 employees or the applicable size standard established by the SBA—whichever is greater. 15 U.S.C. § 636(a)(36)(D)(i). The size of a business concern is determined under the SBA's size standards as they apply to the "concern whose is at issue and **all of its domestic and foreign affiliates**." 13 C.F.R. § 121.301(f)(6)

49.    A PPP loan application (SBA Form 2483) was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. 15 U.S.C. §

636(a)(36)(B). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

50.    PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time.

51.    The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

    a.   That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

    b.   That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

    c.   That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll

taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d.  That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e.  That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f.  That not more than 40 percent of the loan proceeds may be used for nonpayroll costs;

g.  That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h.  That the eligible recipient had not received and would not receive another loan under the Paycheck Protection Program;

i.  That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j.  That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k.  That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

52.    PPP loans were issued in multiple rounds. Loans made during the period beginning on March 27, 2020, and ending on the day before December 27, 2020, are considered "First Draw" loans. Loans made after December 27, 2020, are "Second Draw" loans.

53.    The SBA paid lenders a processing fee for each PPP loan. For loans of not more than $350,000, lenders were paid a processing fee of five percent of the loan amount. For loans between $350,000 and $2,000,000, lenders were paid a processing fee of three percent of the loan amount. 15 U.S.C. § 636(a)(36)(P)(i).

54.    The PPP provides that up to the full amount of a PPP loan can be forgiven if the PPP funds were spent on eligible purposes over an 8-week to 24-week

covered period after the PPP loan is issued. *Id*. § 636m. To obtain forgiveness, the borrower must submit a PPP Loan Forgiveness Application Form 3508S ("SBA Form 3508S"), which requires the borrower to certify compliance with all requirements of the PPP.

55.    SBA Form 3508S requires the borrower to submit supporting documentation to establish that the full amount of the forgiveness request was used on applicable expenses and to certify that all information and documents submitted are accurate and true. After the PPP loan is forgiven, the SBA reimburses the lender for the full amount of the PPP loan plus interest on the loan.

56.    However, even without seeking forgiveness, PPP loans are subsidized through the government by offering very favorable terms. PPP loans have a one percent interest rate, with all payments deferred for at least six months. Loans issued prior to June 5, 2020, have a two-year maturity, while loans issued after June 5, 2020, have a five-year maturity. No collateral or personal guarantees were needed to receive the loans.

57.    An entity can also be eligible for a PPP loan as a small business concern if, as of March 27, 2020:

      a.  The maximum tangible net worth of the business is not more than $15 million; and

18

      b.   The average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

Small bus. Admin, "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)" (June 25, 2020).

58.    In December 2020, the Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act modified and extended the PPP. Consolidated Appropriations Act, 2021, Pub. L 116-260, tit. III, sec. 311 (to be codified as amended at 15 U.S.C. § 636(a)(37)).

59.    To be eligible to receive a second draw loan, an entity must employ not more than 300 employees. 15 U.S.C. § 636(a)(37)(A)(iv).

60.    The Second Draw of the PPP does not allow for any additional size standards by which an entity can be eligible to receive a loan and requires that the eligibility standard must be met by the applicant together with its affiliates.

61.    To receive a Second Draw Loan, an applicant must submit SBA Form 2483-SD, Second Draw Borrower Application Form. Applicants must indicate if the Applicant or any of the Applicant's owners have common management with or own another business.

62.    The authorized representative of the Applicant must certify that the applicant is eligible to receive a Second Draw Loan and that together with its affiliates, the Applicant employs no more than 300 employees.

63.    The SBA adjusted the fees to be paid to lenders for the processing Second Draw PPP Loans to the following amounts:

a.  For a Second Draw PPP Loan of up to $50,000, the lesser of:

  i.  50 percent of the balance of the loan; or

  ii.  $2,500; and

b.  For a Second Draw PPP Loan of more than $50,000:

  i.  5 percent for loans up to $350,000; and

  ii.  3 percent for loans above $350,000.

SBA Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans" 86 Fed. Reg. 3,712, 3,721-22) Jan. 14, 2021 (to be codified at 13 C.F.R. §§ 120-121).

64.    SBA Form 2483, which all applicants must submit to be considered for a PPP loan, requires an indication of Yes or No to the questions: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A." SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

65.     Agency guidance specified that "applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 C.F.R. § 121.301." SBA Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program." 85 Fed. Reg. 20,819 (April 15, 2020).

66.     Entities that have the power to control other entities are affiliates of one another. Entities that are controlled by the same third party are also affiliates of each other as well as the third party. 13 C.F.R. § 121.301(f).

67.     Entities are affiliates of one another if a principal of an entity controls the management of another. Affiliation between entities also arises if a single individual controls the management or board of directors of those entities. 13 C.F.R. § 121.301(f)(3).

68.     Further, the SBA guidance clarified the boundaries of the affiliation rules as applied to PPP loans:

> [B]usinesses that are part of a single corporate group **shall in no event receive more than $20,000,000 of PPP loans in the aggregate.** For purposes of this limit, business are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

SBA Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders" 85 Fed. Reg. 26,324 at 26,325 (May 4, 2020).

21

69.     This rule specifies that applicants have the responsibility to notify the Lender if they have applied for, have received, or expect to receive PPP loans in excess of the $20 million limit per corporate group. "Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes." *Id.*

## V.   FACTUAL ALLEGATIONS

70.     In 2020, Zeigler Auto Group was one of largest auto dealership groups in the country with 61 dealership locations across four states and over $1.5 billion in combined annual revenue.[2]

71.     Zeigler Auto Group claims to employ over 2,500 people.[3]

72.     In 2019, the president of Zeigler Auto Group, Defendant Aaron Zeigler, filed an affidavit in a trade secret case brought by two of the Corporate Defendants here: Zeigler Auto Group II, Inc., and Zeigler Chevrolet – Schaumburg, LLC.

73.     In that affidavit, Mr. Zeigler attested to the following:

My job duties include overseeing Ziegler Auto's dealerships, providing strategic direction to Zeigler Auto and its dealerships, manager and overseeing the day-to-day operations of Zeigler auto, hiring and firing the managers and key employees who have day-to-day oversight over Zeigler Auto's dealerships, hiring and firing Zeigler Auto's employees, managing Zeigler Auto's expenses, and monitoring the financial performance of Zeigler Auto and its dealerships.

Zeigler Auto owns and operates several dealerships, predominately in Michigan and Illinois.

---

[2] https://s3-prod.autonews.com/2021-12/2020-Top-150-Dealership-Groups.pdf
[3] https://www.zeigler.com/zeigler-auto-group-history.htm

. . .
Zeigler Chevrolet benefits from being part of the Zeigler dealership group because it receives confidential business processes, sales processes, negotiating tactics, business development initiatives, advertising and marketing plans and strategies, and employee hiring practices and philosophies from Zeigler.

**Exhibit A – Aaron Zeigler Declaration.**

74.    Additionally, employees at each of the Zeigler dealerships are considered employees of Zeigler Auto Group and "Zeigler [Auto Group] requires its employees to review and agree to [the policies] set forth in Zeigler's Employee Handbook." **Exhibit A**.

75.    Between April 5, 2020, and April 12, 2020, the Corporate Defendants applied for and were approved for twenty separate First Draw PPP Loans through Huntington National Bank totaling $17,798,349. For these loans, Defendants reported a total of 1,287 jobs. Defendants received full forgiveness on at least[4] eighteen of the First Draw Loans, totaling $17,738,413.

76.    The First Draw PPP Loans are as follows:

| Business Name | State | Loan # | Approval Date | Amount | Forgiven Amount | Forgive Date | Number of Jobs |
|---|---|---|---|---|---|---|---|
| Zeigler Chrysler Dodge Jeep, LLC | IL | 5867207001 | 4/6/2020 | $1,875,205 | $1,895,807 | 6/11/2021 | 134 |
| Zeigler Kalamazoo, Inc. | MI | 5648287003 | 4/6/2020 | $112,700 | Unknown | Unknown | 10 |
| Zeigler Kalamazoo II, Inc. | MI | 1182317107 | 4/10/2020 | $1,680,000 | $1,692,105 | 1/20/2021 | 138 |

---

[4] Forgiveness status is not known on two of the First Draw loans.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Zeigler Hoffman Estates I, LLC | IL | 8421807003 | 4/8/2020 | $1,547,242 | $1,564,283 | 6/11/2021 | 60 |
| Zeigler Hoffman Estates II, LLC | IL | 9949437002 | 4/9/2020 | $407,561 | $412,039 | 6/11/2021 | 23 |
| Zeigler Chrysler Dodge Jeep - Downers Grove, LLC | IL | 6068757000 | 4/6/2020 | $1,338,200 | $1,353,049 | 6/11/2021 | 108 |
| Zeigler Orland Park, LLC | IL | 1474497106 | 4/10/2020 | $1,282,987 | $1,297,082 | 6/11/2021 | 90 |
| Zeigler Nissan Orland Park, LLC | IL | 9983787006 | 4/9/2020 | $1,116,300 | $1,128,686 | 6/11/2021 | 78 |
| Zeigler Infiniti Orland Park, LLC | IL | 2351807108 | 4/10/2020 | $554,600 | $560,693 | 6/11/2021 | 47 |
| Zeigler Plainwell, Inc. | MI | 9395977008 | 4/9/2020 | $1,175,300 | $1,183,769 | 1/20/2021 | 97 |
| Zeigler Grandville, Inc. | MI | 5543567008 | 4/5/2020 | $1,144,602 | $1,157,302 | 6/11/2021 | 88 |
| Zeigler Chevrolet - Schaumburg, LLC | IL | 9942727003 | 4/9/2020 | $1,049,800 | $1,061,448 | 6/11/2021 | 72 |
| Zeigler Lincolnwood LLC | IL | 3936567108 | 4/12/2020 | $974,620 | $985,434 | 6/11/2021 | 71 |
| Zeigler North Riverside LLC | IL | 8502077000 | 4/8/2020 | $857,700 | $867,217 | 6/11/2021 | 58 |
| Zeigler Elkhart, Inc | IN | 9521337006 | 4/9/2020 | $713,500 | $718,563 | 1/20/2021 | 61 |
| Zeigler Motorsports LLC | MI | 3942027106 | 4/12/2020 | $695,695 | $703,414 | 6/11/2021 | 59 |
| Zeigler Nissan Gurnee LLC | IL | 8388077006 | 4/8/2020 | $575,600 | $581,987 | 6/11/2021 | 50 |
| Zeigler Schaumburg IV, LLC | IL | 5621447003 | 4/6/2020 | $437,537 | $442,392 | 6/11/2021 | 25 |
| Zeigler Imports, LLC | MI | 8905527009 | 4/9/2020 | $131,700 | $133,143 | 6/11/2021 | 13 |
| Zeigler Auto Group II Inc | MI | 9462937008 | 4/9/2020 | $127,500 | Unknown | Unknown | 5 |
| **Total:** | | | | **$17,798,349** | **$17,738,413** | | **1287** |

24

77.    Additionally, four Corporate Defendants also applied for and received Second Draw PPP Loans through Huntington National Bank, totaling $3,877,194. All four of the Second Draw PPP Loans were forgiven for a total of $3,899,923.

78.    The Second Draw PPP Loans are as follows:

| Business Name | State | Loan # | Approval Date | Loan Amount | Forgiven Amount | Forgive Date |
|---|---|---|---|---|---|---|
| Zeigler Chrysler Dodge Jeep, LLC | IL | 4037338705 | 3/31/2021 | $1,662,365 | $1,671,793 | 10/26/2021 |
| Zeigler Kalamazoo II, Inc. | MI | 5629648408 | 2/9/2021 | $971,100 | $977,858 | 10/25/2021 |
| Zeigler Motorsports LLC | MI | 8391189008 | 5/27/2021 | $689,457 | $692,857 | 11/26/2021 |
| Zeigler Nissan Gurnee LLC | IL | 4125718701 | 3/31/2021 | $554,272 | $557,415 | 10/26/2021 |
| Total: | | | | $3,877,194 | $3,899,923 | |

79.    Between the First and Second Draw Loans, the Corporate Defendants were approved for twenty-four PPP loans, totaling $21,675,543 and received at least $21,638,336 in forgiveness for twenty-two of those loans.

80.    Based on the size of each of the loans, it is believed that Huntington National Bank received $657,704.29 in processing fees from the Government for its role as the lender for all twenty-four of Defendants' PPP Loans.

81.    Zeigler Auto Group directly employs and pays the salary of management positions at each of its dealership locations. Mr. Zeigler is an officer and directly controls each of the Corporate Defendants, as well as several other affiliated entities. Further, Mr. Scheid and Ms. Procarione are the registered agents of nearly all of the Corporate Defendants.

## VI.    CAUSES OF ACTION

### COUNT I
### Violation of the False Claims Act 31 U.S.C. 3729(a)(1)(A)
#### *Against all Defendants*

82.    Relator incorporates by reference paragraphs 1-81 as if each paragraph was set forth again at length here, sentence for sentence and word for word.

83.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729. *et seq.* ("Act")*,* as amended.

84.    Defendants knowingly and intentionally submitted, or caused to be presented, claims for payment where said claims contained materially false statements and misrepresentation.

85.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States for payment or approval.

86.    Specifically, each of the Corporate Defendants knowingly submitted false or fraudulent applications for a federally guaranteed PPP loan that they were not entitled to and subsequently submitted a false or fraudulent applications for PPP loan forgiveness of most of at least twenty-two loans.

87.    The Corporate Defendants, aided by and under the direct control of the Individual Defendants, applied for and received twenty-four PPP loans and each

certified that, together with its business affiliates, did not have more than 500 employees.

88.    However, all of the Corporate Defendants, as well as numerous other entities not named, are corporate affiliates of each other and together employ approximately 2,500 people.

89.    All of the Corporate Defendants share common operational control through Zeigler Auto Group under Mr. Zeigler's direct management.

90.    Further, the Corporate Defendants certified that, in the aggregate as a corporate group, they had not and would not apply for or receive more than $20,000,000 in PPP loans.

91.    However, the Corporate Defendants in fact received a combined $21,675,543 in PPP Loans.

92.    The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, guaranteed the twenty-four loans, subsidized the loans terms, paid the processing/approval fees to the private, non-party lenders, and paid the full forgiveness amounts. But for Defendant's submissions of false claims, the SBA would not have guaranteed any loans, paid any processing fees, nor paid any forgiveness.

93.    By reason of the Defendants' acts, the United States has been damaged, in a substantial amount to be determined at trial.

94.    As such, Defendants submitted false claims and violated the False Claims Act of the United States and are liable for trebled damages and all penalties and fines set forth in those acts, as well as all other applicable relief.

## COUNT II

### False Statements Material to False Claims
### 31 U.S.C. § 3729(a)(1)(B) against all Defendants

95.    Relator incorporates by reference paragraphs 1-81 as if each paragraph was set forth again at length here, sentence for sentence and word for word.

96.    This is a claim for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729– 3733, as amended.

97.    Defendants knowingly caused to be made or used at least forty-six false records or statements material to a false or fraudulent claim, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B). Defendants signed or caused to be signed the PPP loan agreements for twenty-four PPP Loans. However, each of these applications contained materially false statements because the Corporate Defendants did not qualify as small businesses under the SBA's criteria.

98.    Also, while seeking forgiveness for at least twenty-two of the loans, Defendants knowingly and falsely stated that they had complied with all requirements in the PPP Rules. In reliance on Defendants' false statements, the SBA approved the Corporate Defendants' forgiveness applications and transmitted a total of at least $21,638,336 to the lender that processed the loans.

99.    Further, Defendants' false submissions caused the Government to pay Huntington National Bank approximately $657,704.29 in processing fees.

100.   Because of Defendants' acts, the United States suffered damages, and therefore is entitled to treble damages under the FCA, as well as civil penalties for each of the false claims submitted to the SBA.

## COUNT III

Conspiracy to Submit False Claims
31 U.S.C. § 3729(a)(1)(C) against all Defendants

101.   Relator incorporates by reference paragraphs 1-81 as if each paragraph was set forth again at length here, sentence for sentence and word for word.

102.   This is a claim for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729– 3733, as amended. Under § 3729(a)(1)(C), FCA liability attaches for any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)."

103.   Here, the Defendants all conspired to violate subsections (A) and (B), as described above. Mr. Zeigler directed and knowingly allowed direction to be given to the Corporate Defendants to each apply for PPP Loans and false certified that they qualified as small businesses.

104.   Knowing that he could not seek one large loan through Zeiger Auto Group for all of the dealerships combined, Mr. Zeigler conspired for each of the Corporate Defendants to apply for a receive PPP Loans in their names.

29

105.   Upon information and belief, Mr. Zeigler was aided by and conspired with the other Individual Defendants and other individuals unknown at this time.

106.   Because of Defendants' acts, the United States suffered damages, and therefore is entitled to treble damages under the FCA, as well as civil penalties for each instance of an FCA violation.

## COUNT IV

False Statements to the SBA
Under 12 U.S.C. § 1833a (FIRREA) against all Defendants

107.   Relator incorporates by reference paragraphs 1-81 as if each was set forth again at length here, sentence for sentence and word for word.

108.   This is a claim for civil penalties under FIRREA, 12 U.S.C. § 1833a, as amended.

109.   Defendants, for the purposes of fraudulently obtaining twenty-four federally guaranteed PPP Loans and inducing the SBA to forgive at least twenty-two of the PPP Loans, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made false statements or certifications to SBA Lenders and the SBA in violation of 15 U.S.C. § 645(a).

110.   Specifically, Defendants signed, or caused to be signed, the PPP Loan agreements for all PPP Loans, thereby knowingly falsely representing that they would "comply with all SBA guidance" by lying about the actual size of each Corporate Defendant, as defined by the SBA. Also, while seeking forgiveness of the

PPP Loans, Defendants knowingly and falsely stated in the SBA Forms 3508 that they had complied with all requirements in the PPP Rules. These false statements were knowingly false and made for the purpose of influencing the SBA to obtain PPP loan proceeds in violation of 15 U.S.C. § 645(a).

111.   Because of Defendants' acts, they are liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a(b).

### PRAYER FOR RELIEF

**WHEREFORE** for the reasons discussed, Relator requests this Honorable Court enter judgment in his favor, and in favor of the United States of America, against Defendants for compensatory and non-compensatory damages, in addition to treble damages, fines for each false claim submitted, and other damages as provided for under the FCA and FIRREA, plus costs, interest, and attorney fees as provided for under the FCA and FIRREA, in addition to the other relief this Court deems just and equitable.

Respectfully submitted,

By: /s/ *Samuel R. Simkins*

Shereef H. Akeel (P54345)
Samuel R. Simkins (P81210)
Hayden E. Pendergrass (P86888)
Emad R. Hamadeh (P86849)
**AKEEL & VALENTINE, PLC**
888 W. Big Beaver Road 420,
Troy, Michigan 48084
shereef@akeelvalentine.com
sam@akeelvalentine.com

31

hayden@akeelvalentine.com
emad@akeelvalentine.com

Dated: November 17, 2023

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator demands

trial by jury as to all issues triable.

Respectfully submitted,

By: /s/ *Samuel R. Simkins*

Shereef H. Akeel (P54345)
Samuel R. Simkins (P81210)
Hayden E. Pendergrass (P86888)
Emad R. Hamadeh (P86849)
**AKEEL & VALENTINE, PLC**
888 W. Big Beaver Road 420,
Troy, Michigan 48084
shereef@akeelvalentine.com
sam@akeelvalentine.com
hayden@akeelvalentine.com
emad@akeelvalentine.com

Dated: November 17, 2023